HALL, J.
{¶ 1} Darrell L. Haynes appeals from his conviction and sentence on one count of improperly handling a firearm in a motor vehicle, a fourth-degree felony. Haynes pled no-contest to the charge and was found guilty after the trial court overruled his suppression motion.
{¶ 2} In his sole assignment of error, Haynes challenges the trial court's denial of the suppression motion.
{¶ 3} The sole witness at Haynes' suppression hearing was Devin Maloney, a K-9 patrol officer with the Kettering police department. Maloney testified that he was on patrol with his dog on the night of July 9, 2016 when he conducted a random license-plate check of a passing vehicle. His computer alerted him that the registered owner of the vehicle, Keishaun Tims, had a warrant for her arrest. Maloney made a U-turn but failed to catch the other vehicle. He looked at the address associated with the warrant, however, and realized that it was just round the corner at an apartment complex. Maloney proceeded directly to that location. Upon arriving, he saw the subject vehicle parked in front of Tims' apartment. Maloney stopped his cruiser behind the vehicle, which still was running and had its headlights and brake lights on. He shined his spotlight on the vehicle and observed that the female driver matched the physical description of the registered owner of the vehicle. He then approached the vehicle and made contact with Tims, the driver, and Haynes, the front-seat passenger and only other occupant. Maloney obtained identification from Haynes and Tims. Haynes appeared to be particularly nervous, but Maloney had no reason to suspect him of anything criminal. Due to Tims' warrant, Maloney requested a second police unit, which arrived within minutes.
{¶ 4} When the second police unit arrived, the warrant was confirmed with the dispatcher. Tims was removed from her car, handcuffed, and placed in the back of *345 a police cruiser. Police proceeded to talk to Tims about searching her car, but she refused to consent. At that point, Haynes was asked to step away from Tims' car and to wait with an officer. He complied and also consented to a weapons pat-down, but no weapons were found on his person. Haynes then stood behind Tims' car while Maloney deployed his K-9 dog in a free-air sniff.
{¶ 5} Maloney's dog alerted to the driver's side door area of Tims' car. Maloney asked Tims and Haynes whether there was anything illegal or dangerous in the car. After they responded negatively, he proceeded to search the car. The search resulted in police discovering marijuana shake on the floorboard and a marijuana blunt in the ashtray. Maloney also found a loaded handgun behind the passenger's seat. A magazine also was found in the car. Upon discovering the firearm, police handcuffed Haynes. As they were doing so, Haynes asked why he was being handcuffed. Maloney responded, "There's a gun in the car, alright?" Another officer added, "Just until we figure out who's [sic] gun and what's going on." Maloney then stated, "We got to figure out whose it is." Haynes immediately admitted that he owned the gun.
{¶ 6} In its suppression ruling, the trial court found that Haynes reasonably believed he was not free to leave the scene after police obtained his driver's license and retained it. (Doc. # 33 at 3). The trial court also found that Haynes was not handcuffed for officer safety after police discovered the loaded handgun because he already had been patted down and the firearm found in Tims' car already had been secured. (Id. ). Although Haynes also was not Mirandized before he admitted owning the gun, the trial court nevertheless found no basis for suppression. It reasoned that his confession was a spontaneous utterance not in response to police interrogation. (Id. at 6). Therefore, the trial court declined to suppress the confession. It also declined to suppress the gun and the magazine, ruling that they were discovered during a lawful search based on the dog's alert. (Id. ).
{¶ 7} On appeal, Haynes raises three issues. First, he contends the trial court's "most notable factual error" was referring to the incident as a "traffic stop." (Appellant's brief at 10). He also contends the trial court erred in finding that the magazine was discovered in the glove box. (Id. ). Second, he asserts that no basis existed for detaining him because the incident was not a traffic stop and because police lacked any basis for an investigative detention with regard to him. (Id. at 10-11). Third, he argues that his un-Mirandized statement about owning the gun was not spontaneous. Rather, he contends he made the statement in response to words and actions by the officers that were reasonably likely to elicit an incriminating response.
{¶ 8} When ruling on a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " State v. Hopfer , 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting State v. Venham , 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). We must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v. Isaac , 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, 2005 WL 1707019, ¶ 8, citing State v. Retherford , 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, we then must determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
*346 {¶ 9} With the foregoing standards in mind, we see no error in the trial court's ruling. As a threshold matter, we note that the trial court did not err in declining to suppress the gun or the magazine discovered during the search of Tims' car. Following her arrest on the outstanding warrant, her car remained parked in front of her apartment. At that point, nothing prevented Maloney from walking his dog around her car, or any other car, in the lot. This is so because a free-air sniff by a dog is not a "search" under the Fourth Amendment.[1] State v. McCray , 2d Dist. Montgomery No. 26519, 2015-Ohio-3049, 2015 WL 4600856, ¶ 17. Once the dog alerted on the car, Maloney had probable cause to search it. Id. Therefore, the trial court properly refused to suppress the gun or the magazine.
{¶ 10} With regard to Haynes' specific arguments, we see no basis for reversal predicated on the trial court referring to the incident as a "traffic stop." As set forth above, Maloney first observed Tims' car when it passed him heading the opposite direction on the road. He checked the car's license plate and determined that the registered owner, Tims, had an outstanding warrant. Maloney made a U-turn and pursued the car to a parking lot in front of Tims' apartment. The vehicle was stationary when Maloney reached it, but its engine was running, its lights were on, and Tims was in the driver's seat. We see no meaningful difference between this situation and an officer conducting a "traffic stop" by pulling behind a car that was already stopped at a gas station based on the officer determining that the car's registration had expired. See State v. Henderson , 2d Dist. Montgomery No. 26018, 2014-Ohio-4601, 2014 WL 5306669. Because Maloney observed no traffic violation, his encounter in this case arguably might be characterized as an "investigatory stop" rather than a "traffic stop." But we see no conceivable prejudice in characterizing his encounter as a traffic stop, which is simply one type of investigative stop. It is beyond dispute that a police officer may detain a motorist when he has a reasonable, articulable suspicion that the motorist has committed any criminal offense, including a traffic offense, and no other independent reasonable and articulable suspicion is required. State v. Chase , 2d Dist. Montgomery No. 25323, 2013-Ohio-2347, 2013 WL 2492794, ¶ 17. Here the information Maloney received about an active warrant gave him reasonable, articulable suspicion to believe that Tims had committed a criminal offense. Therefore, Maloney was entitled to "stop," "seize," or "detain" Tims to pursue the warrant issue further. Haynes' other argument about the location of the magazine within Tims' car is immaterial. For purposes of our analysis, Haynes has failed to explain what difference it makes whether the magazine was found in the glove box, as the trial court found, or in the same bag with the gun, as he suggests on appeal.
{¶ 11} Haynes next challenges his detention at the scene, arguing that he merely was sitting in a car with someone who had a warrant and that he did nothing indicative of criminal activity. Although Maloney testified that Haynes appeared nervous, Haynes insists that there were no additional facts to justify an investigative detention of him. He also notes that his *347 identification was not returned prior to police searching Tims' car.
{¶ 12} Upon review, we see no illegality in Haynes' detention at the scene. "When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver." State v. Lawson , 180 Ohio App. 3d 516, 2009-Ohio-62, 906 N.E.2d 443, ¶ 39 (2d Dist.), quoting State v. Brown , 2d Dist. Montgomery No. 20336, 2004-Ohio-4058, 2004 WL 1730132, ¶ 14. Such detention " 'may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable.' " Id. , quoting Brown , citing State v. Chatton , 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984). A police officer also may request and obtain identification from a passenger. State v. Wilcox , 2d Dist. Clark No. 2011 CA 99, 2012-Ohio-3400, 2012 WL 3061504, ¶ 16. In addition, "[d]uring an investigative stop of a vehicle, the police officer making the stop may order a passenger to get out of the vehicle pending completion of the stop." State v. Choice , 2d Dist. Montgomery No. 25131, 2013-Ohio-2013, 2013 WL 2150828, ¶ 48. Maloney's detention of Haynes was lawful while he completed his investigation of Tims by confirming her identify and the validity of her warrant and arresting her. See also State v. Starks , 9th Dist. Summit No. 27347, 2015-Ohio-2137, 2015 WL 3498649, ¶ 12 ("Though Starks argues that he should have been free to leave while the officers were processing the arrest of the driver, the continued detention of a passenger is not unreasonable when it is contemporaneous with the arrest of the driver.").
{¶ 13} We note too that Maloney deployed his dog, which already was on the scene, less than two minutes after Tims' arrest and her denial of consent to search her car. In State v. Caulfield , 2013-Ohio-3029, 995 N.E.2d 941 (2d Dist.), this court held that a passenger's continued detention was permissible where a vehicle search "was conducted contemporaneously with the driver's arrest and the search was lawful pursuant to the driver's consent." Id. at ¶ 19. Caulfield cited case law defining "contemporaneously" to mean "at or very near the time of the arrest." Id. at ¶ 17. Here, of course, Tims did not consent to a search of her car. As explained above, however, the dog's free-air sniff was lawful because it was not a search under the Fourth Amendment. In addition, Haynes' continued detention during the free-air sniff was lawful because the sniff occurred contemporaneously with Tims' arrest. The trial court determined that "after ordering [Haynes] out of the car, Officer Maloney promptly deployed the canine to perform an open air sniff around the car." (Doc. # 33 at 2). Once the dog alerted, police had probable cause to search the car. State v. Greene , 2d Dist. Montgomery No. 25577, 2013-Ohio-4516, 2013 WL 5603936, ¶ 17. The dog's alert also provided grounds for them to continue to detain Haynes pending completion of the search, which resulted in the discovery of a loaded handgun and in his admission that he owned the weapon. Furthermore the facts of this case reveal Haynes was independently remaining at the scene because Tims was asking him to retrieve her possessions from the vehicle. For the foregoing reasons, we conclude that Haynes was not unlawfully detained prior to his incriminating statement.
{¶ 14} Haynes' final argument is that his admission about the gun should have been suppressed because it was the product of custodial interrogation without *348 Miranda warnings.[2] Although the police officers did not ask him a question prior to his admission, Haynes contends their responses to his question about being handcuffed were reasonably likely to elicit an incriminating statement from him.
{¶ 15} In its suppression ruling, the trial court rejected Haynes' argument. It recognized that he was not free to leave when he made the admission and that he had not been Mirandized . Nevertheless, the trial court found no "interrogation" and, therefore, no basis for suppression because Haynes "spontaneously blurted out that the weapon was his." (Doc. # 33 at 6). The trial court also reasoned that "the Officers were merely answering Defendant's question as to why he was being handcuffed upon discovery of the gun-conduct normally incidental to arrest." (Id. ).
{¶ 16} We note that " '[i]nterrogation' includes express questioning as well as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " State v. Strozier , 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 20 (2d Dist.), quoting Rhode Island v. Innis , 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "Interrogation" must reflect "a measure of compulsion above and beyond that inherent in custody itself." Innis at 300, 100 S.Ct. 1682. "Police officers are not responsible for unforeseeable incriminating responses." State v. Waggoner , 2d Dist. Montgomery No. 21245, 2006-Ohio-844, 2006 WL 441622, ¶ 14 ; Strozier at ¶ 20. "A suspect who volunteers information, and who is not even asked any questions, is not subject to a custodial interrogation and is not entitled to Miranda warnings." State v. Fair , 2d Dist. Montgomery No. 24120, 2011-Ohio-3330, 2011 WL 2584234, ¶ 39, citing State v. McGuire , 80 Ohio St.3d 390, 401, 686 N.E.2d 1112 (1997).
{¶ 17} In the present case, the trial court made the following findings regarding Haynes' interaction with the police officers just before his incriminating statement:
When Defendant asked why he was being handcuffed, Off. Maloney responded, "There's a gun in the car, alright?" Off. Lambert said, "Just until we figure out who's gun and what's going on." And Off. Maloney followed with, "We got to figure out whose it is." Then Defendant spontaneously admitted that he owned the gun. This spontaneous admission was not in response to any questioning from the Officers. * * *
(Doc. # 33 at 3).
{¶ 18} Having reviewed a recording of the interaction between Haynes and the officers, we see no error in the trial court's ruling. We are not convinced that Haynes' admission was "spontaneous" given that it came in response to the officers' response to the officer's statement. We do agree with the trial court, however, that Haynes' admission was not the product of interrogation. The admission was not in response to any express questioning. It also was not in response to any words or actions, other *349 than those normally attendant to custody, that the police should have known were reasonably likely to elicit an incriminating response from Haynes.
{¶ 19} When Haynes inquired about the reason for him being handcuffed, Maloney advised him that a gun had been found in the car. Informing a suspect of the reason for his detention is a statement normally attendant to custody, particularly when the suspect prompts the statement. State v. Leavitt , 11th Dist. Lake No. 92-L-197, 1994 WL 102391, *2 (Mar. 25, 1994) ; Columbus v. Stepp , 10th Dist. Franklin Nos. 92AP-486, 92AP-487, 1992 WL 281229, *4 (Oct. 6, 1992). Virtually simultaneously with handcuffing Haynes and telling him a gun had been found in the car, the officers added that they just needed to figure out what was going on and whose gun it was. Haynes immediately admitted the gun was his, claiming it was "no big deal."[3] The officers' statements about figuring out what was going on and determining whose gun was involved were a continuation of the officers' explanation for why they were handcuffing Haynes. The statements appear to have been expected to help keep Haynes calm and to minimize any anxiety about being handcuffed and detained, not to create a measure of compulsion for him to incriminate himself. We agree with the trial court's assessment that Haynes' admission was not the product of police "interrogation." Thus, the absence of Miranda warnings did not require suppression of the admission.
{¶ 20} Based on the reasoning set forth above, we overrule Haynes' assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
TUCKER, J., concurs.

In his reply brief, Haynes cites case law for the proposition that police have no basis for searching a legally-parked car for officer safety after removing and/or arresting the occupants. (Appellant's reply brief at 2-3). As set forth above, however, the dog's free-air sniff here was not a "search." And the result of the dog's sniff provided probable cause to search the vehicle.

Haynes also contends "[i]t is important to note that the officers continued to question" him for a substantial period of time before finally advising him of his Miranda rights just before transporting him to the police station. (Appellant's brief at 12). At the outset of the suppression hearing, however, the State conceded that all additional statements Haynes made after admitting ownership of the gun and prior to being advised of his Miranda rights were subject to suppression and would not be used against him. (Suppression Tr. at 4). Therefore, the only relevant statement on appeal is Haynes' admission that the gun was his.

Haynes' exchange with the officers occurs at approximately 01:10:15 on the cruiser camera recording, which is State's Exhibit 1 to the suppression hearing.