**[Cite as *State v. Finfrock*, 2020-Ohio-1142.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28406 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-4783 |
| | : | |
| CHRISTOPHER J. FINFROCK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of March, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

MARK A. FISHER, Atty. Reg. No. 0066939, 5613 Brandt Pike, Huber Heights, Ohio 45424
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Christopher Finfrock appeals from the trial court's judgment finding him guilty of three firearms offenses after overruling his motion to suppress.   For the reasons set forth below, we affirm.

## I.      Facts and Procedural History

{¶ 2} This case arises from a traffic stop that occurred on February 18, 2018.   As a result of that stop, Finfrock was indicted on one count of having weapons under disability (prior drug conviction) in violation of R.C. 2923.13(A)(3), one count of carrying a concealed weapon (loaded/ready at hand) in violation of R.C. 2923.12(A)(2) and one count of improper handling of firearm in a motor vehicle (loaded/no license) in violation of R.C. 2923.16(B).   After pleading not guilty, Finfrock filed a motion to suppress all evidence and statements related to the traffic stop and subsequent search.

{¶ 3} The trial court conducted a hearing on the motion on March 20, 2019.   The State presented the testimony of Dayton Police Officer William Overholtz, who was on routine patrol with his partner on December 18, 2018.   Overholtz testified he was driving east on East Third Street when, at the intersection of East Third Street and South Findlay Street, he observed a black Chevrolet Impala stopped at a red light on South Findlay Street. Overholtz noted that the window tint on the vehicle appeared to be illegal. He also noted the vehicle did not have a front license plate.   As he drove through the intersection in front of the Impala, Overholtz noticed a man in the driver's seat.   Overholtz decided to turn around at a local business just past the intersection in order to get behind, and follow, the vehicle.   After the turn, Overholtz's cruiser was directly behind the Impala. Overholtz noted the car had a Kentucky license plate.   Overholtz observed the Impala

make a right turn onto East Third Street without a turn signal. Overholtz followed the car for one block and observed it make a right turn onto South Philadelphia Street. At that point, Overholtz initiated a traffic stop.

{¶ 4} Overholtz exited his vehicle and noted that the Impala was shaking from side to side.[1] When he approached the driver's window, he noted that a woman, later identified as Jessie Davis, was in the driver's seat. Overholtz also observed a man, later identified as Finfrock, in the front passenger seat. Overholtz testified that Finfrock was "slumped over in the seat facing forward." Tr. p. 13. He also testified that he could not see Finfrock's hands. There was a female passenger in the backseat of the vehicle. Overholtz testified he smelled the odor of burnt marijuana emanating from the vehicle.

{¶ 5} Overholtz directed his partner to remove Finfrock from the car. Finfrock was placed in the back of the cruiser while Overholtz talked to Davis. Overholtz discovered that Davis was the registered owner of the Impala. Davis informed Overholtz she was not driving the car because she did not have her glasses and could not see without them. She stated that Finfrock had been driving. After Finfrock was identified, it was determined that his license was suspended.

{¶ 6} Overholtz decided to have the vehicle towed. After making the decision to tow the vehicle, Overholtz and his partner conducted a search of the vehicle. A box of ammunition for a .380 caliber handgun was located in the center console and a firearm was located underneath the front passenger seat. Thereafter, Finfrock was arrested and conveyed to the Dayton Police Department Safety Building.

---

[1] The video from the cruiser's dashboard camera was submitted into evidence as State's Exhibit 1. The video shows the shaking of the vehicle.

{¶ 7} The State also presented the testimony of Dayton Detective Justin Ellis, who met with Finfrock in an interview room at the Safety Building.[2] Ellis testified that he explained the reason for the interview and immediately began to explain Finfrock's rights to him using a pre-interview form. Finfrock indicated he understood each right as explained by Ellis, and he wrote his initials by each of the enumerated rights. Finfrock then read aloud the waiver of rights, indicated he understood it, and proceeded to sign the form. The only statement made by Finfrock, other than providing identifying information, was a statement indicating that he did not wish to cause trouble for others. Finfrock then invoked his right to an attorney, and Ellis ended the interview.

{¶ 8} In April 2019, Finfrock entered a plea of no contest to all three charges. He was sentenced to community control sanctions for a period not to exceed five years. Finfrock appeals.

## II. Standard of Review

{¶ 9} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the

---

[2] An audio recording of the interview was admitted as State's Exhibit 4.

applicable legal standard." (Citations omitted.) *Id.*

### III. Legality of the Stop

**{¶ 10}** Finfrock's first assignment of error is as follows:

THE TRIAL COURT DID ERROR IN DENYING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS THERE WAS NOT A REASONABLE AND ARTICULABLE SUSPICION THAT DEFENDANT/APPELLANT COMMITTED A VIOLATION OF [THE] OHIO REVISED CODE.

**{¶ 11}** Finfrock argues the stop of the vehicle was illegal. In support, he claims the lack of a front license plate was not a valid reason for initiating the stop because the car was registered in Kentucky, which does not require a front plate. Finfrock also claims the alleged window tint violation was not a sufficient reason to stop the car because the tint was not measured and he was not charged with a window tint violation. Finally, Finfrock appears to claim that, since the failure to signal was not recorded on the cruiser camera, the violation was not established, and thus did not provide a valid basis for stopping the vehicle.

**{¶ 12}** A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic or equipment violation or if the police officer has a reasonable, articulable suspicion that a traffic or equipment violation has occurred or is occurring. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996). It is not disputed that the dashboard camera videotape did not depict the turn signal violation.[3] However,

---

[3] The video from the cruiser camera does not start until the Impala had already come to

Overholtz's testimony, if believed by the trial court, established that he observed Finfrock fail to use his turn signal. This testimony was sufficient to establish that a traffic violation occurred. Thus, the stop was supported by probable cause.

{¶ 13} The first assignment of error is overruled.

## IV. Finfrock's Detention

{¶ 14} The second assignment of error asserted by Finfrock is as follows:

DETAINING THE APPELLANT WAS ILLEGAL.

{¶ 15} In this assignment of error, Finfrock appears to take issue with the fact that he was removed from the Impala and detained in the back seat of the cruiser while Overholtz investigated the matter. He argues he was detained merely because Overholtz believed he had moved from the driver's side to the passenger's seat. He states that the situation, at most, merited further questioning while being issued a traffic citation. We disagree.

{¶ 16} As discussed, the vehicle was lawfully stopped. Thus, Finfrock, whether considered to be the driver or a passenger, could be detained for the duration of the stop. *State v. Haynes*, 2018-Ohio-607, 106 N.E.3d 342, ¶ 12 (2d Dist.). The stop included an investigation of the odor of burnt marijuana and of the reason why Finfrock and Davis switched seats.

{¶ 17} The second assignment of error is overruled.

## V. Search of the Vehicle

---

a stop.

{¶ 18} The third assignment of error states:

THE WARRANTLESS SEARCH OF THE VEHICLE WAS ILLEGAL.

{¶ 19} Finfrock argues Overholtz lacked probable cause to search the Impala. In support, he claims the record demonstrates Overholtz searched the vehicle based upon his "feeling" that there were weapons in the vehicle. Finfrock also claims that no other reasons were given to create a legal justification for the search.

{¶ 20} When a law enforcement officer has probable cause to believe a vehicle contains contraband, he or she may search a validly stopped motor vehicle based on the automobile exception to the warrant requirement. *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). The Ohio Supreme Court has held "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle." *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000). Thus, the odor of burnt marijuana provided probable cause to search the vehicle.

{¶ 21} After the suppression hearing witnesses had been excused, Finfrock argued that the State had failed to demonstrate that Overholtz was qualified to recognize the odor of marijuana. The trial court rejected the argument in part upon a finding that Overholtz's testimony was credible. Specifically, Overholtz's cross-examination includes testimony that his recognition of the odor of burnt marijuana was based upon "objective facts" within his knowledge. Tr. p. 38. Thus, there was evidence in the record to support a finding that Overholtz was qualified to recognize the smell of marijuana.

{¶ 22} The officers were also justified in conducting the search under the inventory

search exception to the warrant requirement. Inventory searches are a well-defined exception to the Fourth Amendment warrant requirement. *State v. Foster*, 2017-Ohio-2858, 91 N.E.3d 98, ¶ 12 (8th Dist.), citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Mesa*, 87 Ohio St.3d 105, 108, 717 N.E.2d 329 (1999). "Under this exception, when a vehicle is impounded, police are permitted to follow a routine practice of administrative procedures for securing and inventorying the vehicle's contents." *Foster* at ¶ *12,* citing *Opperman.* "An inventory search is reasonable when it is performed in good faith pursuant to standard police policy, and 'when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle.' " *Id.,* quoting *State v. Robinson*, 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979).

{¶ 23} During the suppression hearing, Finfrock argued that Overholtz "really wasn't familiar with" the Dayton Police Department Towing Policy. Tr. p. 60. He further argued there were "probably some gaps with respect to the extent that that [sic] it was followed." *Id.* However, Finfrock did not specify any deficiencies related thereto. The trial court found this argument to lack merit.

{¶ 24} The tow policy, which was introduced into the record, demonstrates a preference for towing vehicles under circumstances where the vehicle was operated by a driver with a suspended license. The tow policy does permit the officer to release the vehicle if the registered owner is on the scene or gives another properly licensed driver permission to drive the vehicle. In this case, the record demonstrates Finfrock was driving the vehicle with a suspended license. Further, the owner of the vehicle indicated she was unable to drive the car because she did not have her glasses. There is nothing

in the record to indicate the owner wanted, or gave permission to, anyone else to drive the car. Based upon this evidence, we agree with the trial court's conclusion that the officers properly complied with the Dayton Towing Policy and that the inventory search was therefore valid.

**{¶ 25}** Because we conclude the record supports the legality of the vehicle's search, we overrule the third assignment of error.

## VI.     *Miranda* Violation

**{¶ 26}** Finfrock's fourth assignment of error provides:

APPELLANT'S STATEMENTS WERE OBTAINED IN VIOLATION OF MIRANDA.

**{¶ 27}** Finfrock argues the trial court erred by failing to suppress statements made to the police because "no waiver of *Miranda* rights has been provided much less established."

**{¶ 28}** In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court of the United States held that the state may not use incriminating statements made during a custodial interrogation unless it proves that procedural safeguards resulted in the defendant's voluntary waiver of his constitutional privilege against self-incrimination. These procedural safeguards include informing the defendant, before interrogation, of his right to remain silent, his right to speak with an attorney, and his right to have an attorney present during questioning. *Id.* When a defendant is entitled to these procedural safeguards, and the state has failed to inform the defendant of his rights, any incriminating statements made during a custodial

interrogation must be suppressed at trial.   *Id.*

{¶ 29} The record demonstrates Overholtz arrested Finfrock at the scene of the traffic stop.   Overholtz testified that Finfrock was not questioned at any time between his arrest and the time he was transported to the Safety Building for an interview.   Upon arriving at the Safety Building, Finfrock was placed in an interview room where he met with Detective Ellis.   The record demonstrates that, immediately upon entering the interview room, Ellis used a pre-interview form to administer *Miranda* warnings to Finfrock.   Finfrock acknowledged his understanding of each right and placed his initials next to each of the individually numbered rights.[4]   He also read aloud the waiver of rights located at the bottom of the form and signed the form.   After reviewing and executing the form, Ellis began to question Finfrock.   Other than providing identifying information while executing the pre-interview form and stating that he did not "want to get anybody in trouble," Finfrock did not respond to Ellis's questioning.   Indeed, he almost immediately invoked his right to consult with an attorney, at which point Ellis terminated the interview.

{¶ 30} Other than the comment cited above, we cannot find any statements made by Finfrock during the time he was at the scene of the stop or during the transport to the Safety Building.   As noted, the only statement he gave was made after he was advised of his rights.   Thus, we conclude the trial court did not err in denying the motion to suppress as to any statements made by Finfrock.   Therefore, the fourth assignment of error is overruled.

---

[4] The pre-interview form and a recording of the interview between Ellis and Finfrock are part of the record before us and are labeled as State's Exhibit 3 and 4, respectively.

## VII.    Conclusion

{¶ 31} All of Finfrock's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Mark A. Fisher
Hon. Richard Skelton