[Cite as *State v. White*, 2020-Ohio-5544.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28338 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-1300 |
| | : | |
| DALAQUONE L. WHITE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of December, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

STEVEN H. ECKSTEIN, Atty. Reg. No. 0037253, 1208 Bramble Avenue, Washington Court House, Ohio 43160
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Dalaquone L. White was convicted after a bench trial in the Montgomery County Court of Common Pleas of aggravated possession of drugs, a felony of the second degree. The trial court sentenced him to a mandatory term of three years in prison, to be served consecutively to his sentence in another Montgomery County case.

**{¶ 2}** For the following reasons, the trial court's judgment will be affirmed.

## I. Procedural History

**{¶ 3}** On March 31, 2018, during a traffic stop, a Dayton police officer located drugs in the locked glove compartment of a vehicle that White was driving. White was arrested for drug possession, and on April 27, 2018, a grand jury indicted him for aggravated possession of drugs (methamphetamine) in an amount equal to or exceeding five times the bulk amount, but less than 50 times the bulk amount, a felony of the second degree. White was served with the indictment at the Montgomery County Jail. He pled not guilty to the charge.

**{¶ 4}** The trial court set a scheduling conference for May 21, 2018. At White's counsel's request, that conference was rescheduled for June 4, 2018. On June 5, 2018, presumably based on a representation that a motion to suppress would be filed, the trial court scheduled a suppression hearing for June 25, 2018.

**{¶ 5}** White filed a motion to suppress on June 18, 2018, seeking the suppression of all evidence flowing from the warrantless stop of the vehicle and all statements made by White. White claimed that the officers lacked a reasonable articulable suspicion to stop his vehicle, that the warrantless search of the vehicle was unlawful, and that his arrest was not supported by probable cause. He further claimed that any statements he

made were not voluntary and were made without the benefit of counsel, and that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. The suppression hearing was rescheduled for August 6, 2018; it is unclear who requested this continuance. The hearing again was rescheduled, at the request of the State, to August 31, 2018, due to witness unavailability.

{¶ 6} The suppression hearing proceeded on August 31, as scheduled. At that time, White withdrew the portion of his motion related to any statements that he had made. On October 18, 2018, the trial court overruled the motion to suppress. The court concluded that the officer had a sufficient basis to conduct a traffic stop due to White's possible failure to use a turn signal, that the officers had probable cause to arrest White for operating a motor vehicle without a valid license, and that officers lawfully conducted an inventory search of the vehicle in accordance with the Dayton Police Department General Order 3.02-6 (tow policy). The court further concluded that the inventory search was not a mere pretext for an evidentiary search.

{¶ 7} On October 29, 2018, the trial court held a scheduling conference at which time White informed the court that he wished to waive his right to a jury trial. The trial court asked White if he understood that, at a bench trial, the court would make both the findings of fact and apply the law to those facts and determine whether he was guilty. The court also asked if he understood that, with a jury, he had the right to have twelve people consider the facts and they would have to reach a unanimous decision. White stated that he understood and wanted to waive his right to a jury trial. White signed a jury waiver form. The court scheduled a bench trial for January 22, 2019.

{¶ 8} The court and parties met for a final pretrial conference on January 14. The

trial was rescheduled for January 24. The State's evidence at trial consisted of the testimony of Dayton Police Officers Taylor Gianangeli, Cody Lindsey, and Joshua Erwin, plus exhibits. At the conclusion of the trial, the trial court found White guilty as charged. The trial court ordered a presentence investigation.

{¶ 9} White appeared for sentencing on February 19, 2019. The court imposed 36 months in prison, to be served consecutively to his sentence in Montgomery C.P. No. 2017-CR-288. The court notified White that he would be subject to three years of postrelease control and of the consequences of violating postrelease control. The court determined that White was not eligible for intensive program prison or shock incarceration. The court further determined that White was entitled to 242 days of jail time credit. The court waived court costs.

{¶ 10} White appeals from his conviction.

## II. *Anders* Appeal Standard

{¶ 11} White's initial appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We informed White that his attorney had filed an *Anders* brief on his behalf and granted him 60 days from that date to file a pro se brief. White subsequently filed a pro se brief, raising claims that the State's evidence was insufficient, that his conviction was against the manifest weight of the evidence, and that his trial counsel rendered ineffective assistance at trial.

{¶ 12} Upon our initial review, we noticed that a transcript of the October 29, 2018 hearing had not been filed, and we found a non-frivolous issue related to White's waiver of his right to a jury trial. We appointed new counsel for White.

{¶ 13} White's current appellate counsel supplemented the record with the

transcripts of the October 29, 2018 scheduling conference and the January 14, 2019 pretrial conference. He has filed a second *Anders* brief and a request to withdraw. Counsel noted potential assignments of error related to the trial court's denial of White's motion to suppress and whether White's conviction was based on insufficient evidence and against the manifest weight of evidence.

{¶ 14} Pursuant to *Anders*, we must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Anders* at 744; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue — whether presented by appellate counsel, presented by the defendant, or found through an independent analysis — is not wholly frivolous, we must appoint different appellate counsel to represent the defendant. *Id.* at ¶ 7.

## II. Motion to Suppress

{¶ 15} Appellate counsel's second proposed assignment of error states that the trial court erred when it overruled White's motion to suppress the methamphetamine. He raises that the vehicle White was driving stopped in a legal parking space and the officers could have decided to leave the vehicle there rather than towing it.

{¶ 16} In ruling on a motion to suppress, the trial court "assumes the role of the

trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

**{¶ 17}** The State's evidence at the suppression hearing consisted of the testimony of Officers Gianangeli and Lindsey, the cruiser videos from Gianagelli's and Erwin's cruisers, a Google map of the area at issue, and the Dayton Police Department's tow policy. White presented no witnesses or exhibits. The State's evidence established the following facts.

**{¶ 18}** Officers Gianangeli, Lindsey, and Erwin graduated together from the Dayton Police Academy on August 31, 2017.

**{¶ 19}** On March 31, 2018, Officer Lindsey was driving southbound on James H. McGee Boulevard, approaching the Marathon gas station near the intersection with West First Street, when he saw a vehicle do a "burn out" (i.e., squeal its tires) in the parking lot and exit the gas station. Officer Lindsey testified that this conduct constituted a traffic violation. Lindsey turned into the gas station to follow the vehicle and saw the vehicle turn right onto Clemmer Street without signaling. Officer Lindsey called for back-up and initiated a traffic stop of the vehicle for the turn signal violation.

**{¶ 20}** Officer Lindsey approached the vehicle on the passenger side. The

vehicle had two occupants: White in the driver's seat and a woman in the front passenger's seat.   As Lindsey approached the vehicle, White "leaned over locking the glove box on the passenger side."   Officer Lindsey knocked on the window, made contact with White, and told White that he had been stopped for failure to signal.   Lindsey asked if White had a driver's license on his person and at all; White responded "no" to both questions.

{¶ 21} Officer Erwin arrived and approached the driver's side of the vehicle. Officer Lindsey asked White to exit the vehicle.   Officer Lindsey placed White in the back seat of his cruiser while he obtained White's information and wrote a citation.   Officer Lindsey ran White's name and Social Security number through LEADS and learned that White was driving on a suspended driver's license.   Officer Lindsey asked White if he could search the vehicle, and White said, "No."

{¶ 22} Officer Erwin spoke with the passenger and obtained her information. Officer Lindsey then ran the passenger's information.   He learned that she had an arrest warrant for theft.   Officer Erwin confirmed with dispatch that the warrant was valid. Because the passenger was going to be arrested on the warrant, she also was unable to drive away with the vehicle.

{¶ 23} Officer Lindsey testified that, under these circumstances, the officers were supposed to inventory the vehicle and tow it.   Lindsey stated that no search occurred before the inventory search.

{¶ 24} Officer Gianangeli responded to the traffic stop in progress.   She testified that another officer was needed because there were two individuals and the vehicle was going to be towed.   After speaking briefly with the other officers, Officer Gianangeli

removed the passenger from the vehicle, patted down the passenger, and placed the passenger in her cruiser.

{¶ 25} Officer Gianangeli identified the Dayton Police Department's tow policy. She testified that the officers were entitled to tow the vehicle, because White, the driver, was driving under suspension and did not have a valid license. Gianangeli further testified that the passenger was not the registered owner of the vehicle, had warrants for her arrest, and was going to be arrested.

{¶ 26} Gianiangeli pointed to Section 1(A) of the tow policy, which addresses drivers who are driving without a valid operator's license, as the relevant section of the tow policy. That provision states, in part:

Driver/Owner Arrested: Vehicles operated by drivers without an operator's license, while under suspension, operating while under the influence or where the vehicle was used in the commission of crime should preferably be towed from where they were stopped, including private property * * *.

(Emphasis sic.) Dayton Police Department General Order 3.02-6 Section 1(A). The tow policy further directs officers in an arrest situation to inventory property "inside the vehicle's passenger compartment, glove box, console, and trunk prior to towing." *Id.*, Section IV(B)(1).

{¶ 27} While Officer Gianangeli was conducting an inventory search of the vehicle, she found the keys to the vehicle on the driver's floorboard. Gianangeli opened the locked glove compartment with the keys and found a clear baggie with what appeared to be crystal meth, based on her training and experience. Officer Gianangeli informed the other officers that she had located drugs, and she continued to inventory the vehicle.

She also located an opened bottle of Hennessey (liquor) underneath the seat.

{¶ 28} White was placed under arrest for drug possession. Officer Lindsey also cited White for failure to signal and driving under suspension.

{¶ 29} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Whether a stop and/or search is reasonable under the Fourth Amendment depends upon the particular facts and circumstances, viewed objectively by examining the totality of the circumstances. *See State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 14.

{¶ 30} Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 31} In this case, Officer Lindsey testified that he observed White commit two traffic violations: he first squealed his tires driving in the gas station parking lot and then made a right turn at an intersection without signaling. The officer's observations created

a reasonable and articulable suspicion of criminal activity to justify the stop of the vehicle White was driving.

{¶ 32} After stopping a motorist for a traffic violation, a police officer may order the motorist to get out of his car, even without suspicion of criminal activity. *State v. Dozier*, 187 Ohio App.3d 804, 2010-Ohio-2918, 933 N.E.2d 1160, ¶ 8 (2d Dist.), citing *State v. Evans*, 67 Ohio St.3d 405, 407, 618 N.E.2d 162 (1993) and *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Officer Lindsey acted lawfully when he asked White to exit the vehicle while he checked White's information through dispatch.

{¶ 33} Officer Lindsey learned through dispatch that White had a suspended driver's license, that his passenger had a warrant for her arrest, and that neither was the registered owner of the vehicle. Accordingly, the officers reasonably concluded that neither White nor his passenger (who was arrested on the warrant) could lawfully drive away in the vehicle.

{¶ 34} "Inventory searches serve to protect the owner's property while in police custody, to protect the police from claims that property has been lost or stolen, and to protect officers from danger that may be at hand." *State v. Atkinso*n, 9th Dist. Lorain No. 19CA011481, 2020-Ohio-3522, ¶ 13, citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). We have described the inventory exception to the warrant requirement of the Fourth Amendment, stating:

> "[T]he 'inventory exception' to the warrant requirement of the Fourth
> Amendment permits the police to conduct a warrantless search to produce
> an inventory of the contents of an impounded vehicle." To satisfy the
> inventory exception, the vehicle must be lawfully impounded, the inventory

search must be conducted pursuant to reasonable standardized procedures and also not be a pretext for an evidentiary search. With respect to the standardized policy requirement, " 'the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that policy.' "

(Citations omitted.) *State v. Thompson,* 2d Dist. Montgomery No. 26130, 2014-Ohio-4244, ¶ 38.

{¶ 35} The officers testified that they decided to tow the vehicle because the passenger was being arrested and White could not lawfully drive away in the vehicle. Officers Gianangeli and Lindsey both testified that the Dayton Police Department's tow policy justified the tow under the circumstances, and the State presented the policy as an exhibit. Officer Gianangeli conducted the inventory search, using the vehicle's keys to open the locked glove compartment, where drugs were found. The tow policy instructs officers to inventory the property inside the vehicle's passenger compartment, glove box, console, and trunk prior to towing. The trial court found that the officer acted in accordance with the tow policy when she conducted the inventory search.

{¶ 36} Officer Lindsey acknowledged that he had asked White if he could search the vehicle, and White said no. White asserted at the suppression hearing that the decision to tow the vehicle was a pretext for an evidentiary search. The trial court stated in its decision:

> * * * Defendant refused to consent to a search and within a short time
> officers made the decision to impound the vehicle thus providing the

opportunity to conduct an inventory search. The court finds that this is somewhat similar to *City of Blue Ash v. Kavanagh*, [113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810]. There is evidence to support an argument that the impound and search procedure was merely a pretext for an evidentiary search. The apparent movement toward the glovebox gave officers suspicion that Defendant may have had a weapon or drugs. On the other hand, the Defendant did not have a valid driver's license. His passenger didn't own the car and was being arrested on a warrant. There was no one to validly operate the vehicle from this public street.

In *Kavanagh*, the police questioned the defendant about marijuana. The defendant denied the existence of marijuana, but did admit he had a loaded gun in the car. In *Kavanagh* defendant's driver's license was expired and there were expired license plates. So *Kavanagh*, like the case at bar, involves evidence of traffic regulation violations. The Ohio Supreme Court ultimately found there was appropriate use of the impound policy. Given the similarity, the court finds that the impound-tow-inventory search procedure here is appropriate. It is standard for the police to utilize their tow policy in these situations where there is not a valid driver on scene.

{¶ 37} We have commented that the Dayton Police Department tow policy "demonstrates a preference for towing vehicles under circumstances where the vehicle was operated by a driver with a suspended license." *State v. Finfrock*, 2d Dist. Montgomery No. 28406, 2020-Ohio-1142, ¶ 24. Although Officer Lindsey asked White if he (the officer) could search the vehicle prior to deciding to tow the vehicle, that question

alone did not require a conclusion that the subsequent inventory search was pretextual. The Dayton Police Department tow policy authorized the inventory search under the circumstances in this case, and the evidence demonstrated that Officer Gianangeli complied with that policy when she conducted the inventory search. We find no arguably meritorious claim that the trial court erred in denying White's motion to suppress.

### III. Sufficiency and Manifest Weight of the Evidence

{¶ 38} Appellate counsel's first potential assignment of error claims that White's conviction was based on insufficient evidence and was against the manifest weight of the evidence.

{¶ 39} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 40} In contrast, when reviewing an argument challenging the weight of the evidence, an appellate court may not substitute its view for that of the trier of fact, but reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence,

the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 41} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 42} The State's evidence at trial primarily consisted of the testimony of Officers Lindsey, Erwin, and Gianangeli. The parties stipulated to the lab results from the Miami Valley Regional Crime Lab, which identified the off-white crystalline substance as methamphetamine with a net weight of 111.49 grams, plus or minus 0.02 grams. (The bulk amount of methamphetamine is 3 grams.)

{¶ 43} The additional evidence at trial largely mirrored the evidence at the suppression hearing. On March 31, 2018, Officer Lindsey initiated a traffic stop of a 2002 Chevy Trailblazer driven by White. Officer Lindsey testified: "So after the stop is made, I exit my cruiser. I approach the passenger side of the vehicle. As I'm approaching the vehicle, I see Mr. White -- he is leaned over the passenger side with his hand on the glove department in sort of this type of manner as if he was going to open or close it." (Officer Lindsey demonstrated with his hand, palm up.) Lindsey stated that White then leaned back toward the driver's side and lowered the window.

{¶ 44} Officer Lindsey informed White that he (the officer) had stopped White for failing to signal on Clemmer when he (White) turned right. White said that he understood. The officer then asked White for his driver's license and insurance. Lindsey testified that White said he "was actually getting that out of the glove box." Lindsey continued: "I asked him if he could present that to me. He then said -- he didn't really actually -- correction -- he didn't really say anything. I said, do you have a driver's license? He said, no. I reconfirmed the question. Do you actually have a driver's license? He said, no." At that point, Officer Erwin approached the vehicle along the driver's side. Once Erwin was there, Officer Lindsey told White to step out of the vehicle.

{¶ 45} Leaving the passenger in the vehicle, Officers Lindsey and Erwin walked White back to Officer Lindsey's cruiser. Officer Lindsey ran White's information and learned that White's driver's license was suspended and that he was not the registered owner of the vehicle. White told Lindsey that the vehicle was "his people's cousin's car." Officer Lindsey began writing a citation for White.

{¶ 46} Meanwhile, Officer Erwin had returned to the vehicle to obtain the passenger's information. After Erwin returned, Lindsey ran the passenger's information and discovered there was a warrant for her arrest.

{¶ 47} Officer Erwin called for another officer, and Officer Gianangeli came to assist with the stop. Officer Lindsey informed her that the driver had a suspended license and the vehicle was going to be towed. Lindsey asked Gianangeli to conduct a tow inventory. Officer Gianangeli removed the passenger from the vehicle and placed the passenger in her cruiser.

{¶ 48} Officer Gianangeli testified that she began the inventory on the driver's side,

looking for valuables. She noticed a set of keys under the driver's seat, which thought was odd, and collected them. While checking for valuables on the passenger side of the vehicle, Gianangeli noticed that the glove compartment was locked; she used the keys to unlock it. Officer Gianangeli stated that she "discovered what she recognized as contraband in the glove compartment." Specifically, she saw "a large bag of drugs sitting right on top." Officer Gianangeli called Officer Erwin over to observe the drugs before she removed them from the vehicle. Officer Gianangeli gave the drugs to Officer Lindsey. Officer Lindsey later submitted the drugs to the police department's property room and they were sent to the lab for analysis.

{¶ 49} Officer Gianangeli testified that she observed Officer Erwin inform White and the passenger of their *Miranda* rights; both individuals declined to talk with the officer and did not make any statements.

{¶ 50} The trial court found White guilty of aggravated possession of drugs, in violation of R.C. 2925.11(A). That statute provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶ 51} Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶ 52} " 'Possess' or 'possession' means having control over a thing or substance." R.C. 2925.01(K). Possession of a drug may be either actual physical possession or constructive possession. *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18. "A person has constructive possession of an item when he [or she] is

conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his [or her] immediate physical possession." (Citations omitted.) *Id.* at ¶ 18.   "Establishment of ownership is not required." *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 33.

{¶ 53} In determining whether an individual possessed an item, it is necessary to consider all of the facts and circumstances surrounding the incident. *Mabry* at ¶ 20. Possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."   R.C. 2925.01(K).   However, "proximity to an object may constitute some evidence of constructive possession."   *State v. Wiley*, 2d Dist. Darke No. 2011-CA-8, 2012-Ohio-512, ¶ 20, quoting *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13.   "Thus, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession."   *State v. Adams*, 2d Dist. Clark No. 2018-CA-80, 2019-Ohio-1140, ¶ 22, quoting *Kingsland* at ¶ 13.

{¶ 54} The State's evidence, if believed, established that White had constructive possession of the drugs in the glove compartment.   While approaching the stopped Trailblazer, Officer Lindsey observed White leaning toward the passenger side of the vehicle with his hand on the glove compartment as if he were opening or closing it.   When asked by Officer Lindsey if he had his driver's license and insurance, White indicated that he was getting it from the glove compartment, but White did not have his driver's license and he did not present any insurance information.   Officer Gianangeli found the keys to the vehicle, including the locked glove compartment, on the floor under the driver's seat.

Viewing the evidence in the light most favorable to the State, the trial court could have reasonably found that White's actions demonstrated that he knew of the drugs in the glove compartment and thus knowingly had constructive possession of them.

{¶ 55} Appellate counsel further argues that White's conviction was against the manifest weight of the evidence. In reaching its verdict, the trial court was free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented. *State v. Baker,* 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28. It was the province of the trial court, as the trier of fact, to weigh the evidence and determine whether the State had proven, beyond a reasonable doubt, that White committed aggravated possession of drugs.

{¶ 56} The evidence at trial indicated that the Chevy Trailblazer did not belong to White, and White initially told the officer that he was reaching for the glove compartment to get information needed for the traffic stop. Although the trial court could have concluded that White did not knowingly possess the drugs in the glove compartment, we find no non-frivolous claim that the trial court's verdict was against the manifest weight of the evidence.

## IV. Jury Waiver

{¶ 57} As stated above, White expressed a desire to waive his right to a jury trial and proceed with a bench trial. In Ohio, Crim.R. 23 and R.C. 2945.05 govern a felony defendant's waiver of his jury-trial rights. Crim.R. 23(A) provides: "In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney."

{¶ 58} R.C. 2945.05 sets forth the manner in which a defendant may waive his right to a jury trial. *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, ¶ 6. That statute states:

In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."

Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

{¶ 59} The Supreme Court of Ohio has identified five conditions that must be satisfied in order for a jury waiver to be valid. *Lomax* at ¶ 9. The jury waiver must be "(1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court." *Id.* Trial courts must strictly comply with the requirements of R.C. 2945.05. *E.g., State v. Pless*, 74 Ohio St.3d 333, 339, 658 N.E.2d 766 (1996). "In the absence of strict compliance with R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." *Id.* at 337.

{¶ 60} "If the record shows a jury waiver, the conviction will not be set aside except on a plain showing that the defendant's waiver was not freely and intelligently made." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 106; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 49. "[A] written waiver is presumptively voluntary, knowing, and intelligent." *Jackson* at ¶ 110, citing *Hunter* at ¶ 49. A trial court is not required to question a defendant to ensure that he or she understands all the rights to a jury trial that are being waived. *Jackson* at ¶ 109.

{¶ 61} On October 29, 2018, the trial court held a scheduling conference in open court, during which defense counsel informed the trial court that White wished to waive a jury trial and to be tried by the court. The trial court addressed White directly and explained the difference between a bench and a jury trial. White expressed his understanding and said that he was waiving his right to a jury trial. White and his attorney signed a written jury waiver form. At the bottom of that form, the trial court found that the waiver was made knowingly, intelligently, and voluntarily. The written waiver form was filed on October 30, 2019. On this record, we find no non-frivolous issue related to White's waiver of his right to a jury trial.

## V. Sentencing

{¶ 62} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the

sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

**{¶ 63}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 64}** The trial court ordered a presentence investigation, and the sentencing hearing transcript reflects that the trial court considered the statutory factors in R.C. 2929.11 and R.C. 2929.12. White was 28 years old at sentencing, and the presentence investigation report indicated that White had juvenile adjudications and an adult criminal history, including several misdemeanor and three prior felony convictions. Most notably, in 2011, White was convicted of aggravated robbery, a first-degree felony, for which he received a four-year prison sentence; White violated his post-release control following that sentence and was reincarcerated. In 2018, while serving a community control sentence in a 2017 case, White was convicted of illegal conveyance of drugs of abuse onto the grounds of a detention facility, a fourth-degree felony.

**{¶ 65}** The trial court imposed three years in prison. The court indicated that the three-year prison term was mandatory, pursuant to R.C. 2929.13(F). The court stated that White could not get judicial release and that he was not eligible for shock

incarceration or intensive program prison. The trial court informed White that he would be subject to three years of post-release control upon his release from prison and of the consequences if he violated post-release control. The trial court found that White was indigent and waived both the mandatory fine and court costs. The court determined that White was entitled to 242 days of jail time credit.

{¶ 66} The trial court further found that White violated his community control in another case (Montgomery C.P. 2017-CR-288), terminated his community control, and imposed nine months in prison, to be served consecutively with his sentence in this case. The court indicated that consecutive sentences were required by law.

{¶ 67} Upon review of the record, we find no non-frivolous issues related to White's sentence. The court imposed a sentence on the lower end of the statutory range for a second-degree felony. The court correctly stated that the prison term was mandatory, pursuant to R.C. 2929.13(F). Because White was previously imprisoned for a felony of the first degree, the trial court correctly stated that White was not eligible for shock incarceration or intensive program prison. R.C. 5120.032(B)(2)(a); R.C. 5120.031. The court correctly informed White about post-release control. Because White was convicted of failure to comply with an order or signal of a police officer, a third-degree felony, in Case No. 2017-CR-288, the trial court also properly imposed consecutive sentences as required by statute. *See* R.C. 2929.14(C)(3); R.C. 2921.331(D).

## VI. Conclusion

{¶ 68} We have examined the entire record and conducted our independent review in accordance with *Penson*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300. We conclude that no non-frivolous issues exist for appeal. Accordingly, the trial court's judgment will

be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J., and HALL, J. concur.

Copies sent to:

Mathias H. Heck
Andrew T. French
Steven H. Eckstein
Dalaquone L. White
Hon. Timothy N. O'Connell