[Cite as *State v. Almeyda*, 2021-Ohio-862.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28727 |
| | : | |
| v. | : | Trial Court Case No. 2019-CRB-2990 |
| | : | |
| DANIEL ALMEYDA | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of March, 2021.

. . . . . . . . . . .

MATTHEW KORTJOHN, Atty. Reg. No. 0083743, Assistant City of Dayton Prosecuting Attorney, 335 West Third Street, Room 372, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

CARL BRYAN, Atty. Reg. No. 0086838, 120 West Second Street, Suite 603, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Daniel Almeyda appeals from the trial court's judgment convicting him of two counts of violating a protection order. Almeyda's appointed counsel has filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that he cannot not find any non-frivolous issues on appeal, and he has asked to withdraw as counsel. Upon our independent review, we agree with counsel's assessment. Thus, the trial court's judgment will be affirmed.

## Procedural History

{¶ 2} By separate criminal complaints, Almeyda was charged with two counts of violating a protection order, in violation of R.C. 2919.27(A)(1), both first-degree misdemeanors. Following a jury trial, Almeyda was convicted on each count. The trial court sentenced Almeyda to a 180-day jail term on each count, but the court suspended 120 days on the second count. The trial court ordered that the sentences be served consecutively. In doing so, the trial court made the consecutive sentence findings required by R.C. 2929.14(C)(4), and the findings were incorporated into the judgment entry of conviction. In addition, Almeyda was sentenced to 2 years of supervised probation. Almeyda appealed, and counsel was appointed for him. As noted, counsel has filed an *Anders* brief. Almeyda was informed of his right to file a pro se brief, but no pro se brief has been filed.

## *Anders* Standard

{¶ 3} An appellate court, upon the filing of an *Anders* brief, has a duty to determine, "after a full examination of the proceedings," whether the appeal is, in fact, "wholly frivolous." *Anders* at 744; *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous based upon a conclusion that the State has a strong

responsive argument. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. A frivolous issue, instead, is one about which, "on the facts and law involved, no responsible contention can be made that offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8. If we find that any issue is not wholly frivolous, we must reject the *Anders* brief and appoint new counsel to represent the defendant.

### *Anders* Analysis

{¶ 4} Consistent with his duties under *Anders*, counsel has suggested as a potential assignment of error that trial counsel rendered ineffective assistance by her failure to make a Crim.R. 29 motion for acquittal. Counsel states that, upon review, he has concluded that the suggested assignment of error is without potential appellate merit. We agree.

{¶ 5} Review of an assertion of ineffective assistance of counsel is governed by the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first step in the analysis is to determine whether counsel's performance "fell below an objective standard of reasonableness" so that the defendant was deprived of the assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. *State v. Hill*, 2d Dist. Montgomery No. 25274, 2013-Ohio-2016, ¶ 27, quoting *State v. Matthews*, 189 Ohio App.3d 446, 2010-Ohio-4153, 938 N.E.2d 1099, ¶ 39 (2d Dist.). Assuming the first part of the test is met, the second prong focuses on whether the defendant was prejudiced by the ineffective assistance. *Id.* To prevail on this prong of the test, a defendant must "establish there is a reasonable probability that, [but for counsel's deficient performance], the result of the proceeding

would have been different." *State v. Hartman*, 2d Dist. Montgomery No 27162, 2017-Ohio-7933, ¶ 31, citing *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204.

{¶ 6} A trial court reviews a Crim.R. 29 motion for acquittal under the sufficiency of the evidence standard. Under this standard, "the relevant inquiry, after viewing the evidence in the light most favorable to the prosecution, [is whether] any rational [juror] could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A different but related inquiry occurs when an appellate court reviews whether a verdict is supported by the manifest weight of the evidence. In this circumstance, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the [jury] 'clearly lost its way and created such a miscarriage of justice that the conviction musts be reversed and a new trial ordered.' " *Hill* at ¶ 16, quoting *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Since the issue is whether the verdict creates an obvious miscarriage of justice, a reversal based upon the manifest weight of the evidence is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶ 7} Although distinct legal concepts, a finding that a verdict is not against the manifest weight of the evidence "includes a finding of sufficiency." *Hill,* 2d Dist. Montgomery No. 25274, 2013-Ohio-2016, at ¶ 31, quoting *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. Thus, a conviction that is "supported by

the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.*, quoting *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 8} In this case, Almeyda was charged with two counts of violating a protection order in violation of R.C. 2919.27(A)(1). The first instance occurred on June 2, 2019, and the second occurred on June 20, 2019. R.C. 2919.27(A)(1) states, in relevant part, that "no person shall recklessly violate the terms of * * * a protection order issued * * * pursuant to * * * 3113.31 of the Revised Code."

{¶ 9} Almeyda and Aubrey G., the complainant, had a 20-year relationship. Almeyda is the father of Aubrey's three daughters who, in June 2019, were ages 11 and 4 (the younger daughters are twins). Prior to May 23, 2019, Almeyda, Aubrey, and the children resided together at a home in Dayton. On May 23, 2019, Aubrey obtained an ex parte domestic violence civil protection order (CPO) under R.C. 3113.31. Among other things, the CPO required Almeyda to vacate the parties' home (which he did), and "not to be present within 500 feet" of Aubrey. The evidence at trial established that the CPO was in force on June 2 and June 20, 2019. The evidence also established that Almeyda was served with the CPO on May 23, 2019.

{¶ 10} Aubrey testified that, on June 2, at approximately noon, she and her daughters were outside in front of their home. Aubrey and her oldest daughter were watching the twin daughters ride their bicycles. Aubrey further testified that Almeyda drove past the home in his Honda Odyssey van at that time. Aubrey testified that Almeyda then drove back in front of the home, and this time he stopped the van. Aubrey testified that when Almeyda drove past the home and when he then stopped in front of the home, he was less than 500 feet from her person. (This is obvious since 500 feet is

almost 167 yards.)  Then the following exchange occurred:

Q: * * * You said that [Almeyda] pulls up along the curb * * *

[Aubrey]: Yeah.

Q: * * * What does [Almeyda] do at that point?

[Aubrey]: He say, Aubrey, Aubrey and he's crying and I kept saying, girls, go in the house.  Go in the house.  He says Aubrey, I, what's going on?  I just said Danny, I have a protection order.  You're not supposed to be here. You need to go.  I said, you need to get help.  If you want to get, if you get help, I'll let you see the kids.  I said –

Q: Okay. You're, you're telling him at this point –

[Aubrey]: Yeah.

Q: He needs to leave.

[Aubrey]: Yeah, I said you just need to go and I went into the house.

* * *

After this exchange, Aubrey went into her home.  However, Almeyda did not immediately leave, and while the van remained parked in front of the home, Aubrey took a photograph which depicted Almeyda seated in the van.  The photograph was introduced at trial as State's Exhibit 3.

{¶ 11} Aubrey called the Dayton Police Department to report Almeyda's conduct, and Officer Katherine Brooks responded to her home.  Following a conversation with Brooks regarding her options, Aubrey informed Brooks that she did not want to proceed with a criminal complaint against Almeyda.  Instead, Aubrey accepted Brooks's offer to call Almeyda, let him know that Aubrey had called the police, and inform Almeyda that his

conduct violated the CPO. Brooks called the telephone number Aubrey provided and, after confirming she was talking to Almeyda, she informed Almeyda that his conduct violated the CPO and could result in a criminal charge. Almeyda admitted his knowledge of the CPO but indicated, since "he saw the kids in the front yard" and did not see Aubrey, he "thought it would be okay to * * * see his kids and then he left."

{¶ 12} Aubrey testified that, on June 20, 2019, at approximately 9:00 p.m., she was at home in her living room watching television. Aubrey indicated that some interior lights were on, the living room curtains were open, and the front door was also open. While so positioned, Aubrey observed Almeyda drive past the home several times; each time, Almeyda was within 500 feet of Aubrey's person. At this point, Aubrey turned off the television and the downstairs lights, closed the living room curtains, and shut the front door. Aubrey then went upstairs with the intent of going to bed. From an upstairs bedroom window, Aubrey observed Almeyda's van parked on a nearby intersecting street. Aubrey testified that Almeyda's decision to park the van and watch her closed-up home concerned her, because she "had no idea what [Almeyda] was doing." Thus, Aubrey called 9-1-1.

{¶ 13} Kevin Ringler, Aubrey's neighbor (and Almeyda's former neighbor), testified that on June 20, 2019, in the time frame described by Aubrey, he was outside his home, and, while so situated, he observed Almeyda drive past Aubrey's home. Ringler, who was aware of the situation between Almeyda and Aubrey, sent Aubrey a text message at 9:41 p.m., which stated "[Almeyda] just drove by * * * I saw him." The text message was introduced as State's Exhibit 4.

{¶ 14} The State's final witness was Dayton Police Officer Christopher White, an

officer dispatched in response to Aubrey's 9-1-1 call on June 20. White testified that, when he arrived in Aubrey's neighborhood, he observed a Honda Odyssey van matching the vehicle description he was provided. Upon making this observation, White made a U-turn so that he could initiate a stop of the Honda van. White testified that, at this point, the van "significantly speeded up." Following policy, White did not initiate a pursuit, and he lost sight of the van. White continued to patrol the area, and he again spotted the van while doing so. White testified that, at this point, he "cut [his] vehicle in front of [the van], threw [his] vehicle into park, activated the emergency light equipment, exited, and ordered the person out of the [van]." The sole occupant of the van was Almeyda.

{¶ 15} After the State rested its case, Almeyda did not present any testimony or admit any evidence, and the jury found Almeyda guilty on both counts.

{¶ 16} The State's evidence in this case was overwhelming and unrebutted. Given this, an assignment of error asserting that Almeyda's conviction was not supported by the manifest weight of the evidence would be without potential merit. And, since a manifest weight argument would be without potential merit, a sufficiency of the evidence argument would also be wholly frivolous. Finally, since counsel's suggested Crim.R. 29 assignment of error is predicated on a sufficiency of the evidence analysis, the suggested assignment of error would be equally frivolous.

{¶ 17} In addition, we have reviewed the entire record, including jury selection, the opening statements, the closing arguments, and the jury instructions. This review has not revealed any potentially meritorious appellate issues.

## Conclusion

{¶ 18} Having found no non-frivolous appellate issues, counsel is permitted to

withdraw, and the judgment of the Dayton Municipal Court is affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Matthew Kortjohn
Carl Bryan
Daniel Almeyda
Hon. Deirdre E. Logan