[Cite as *State v. Deberry*, 2021-Ohio-2532.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-22 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-57 |
| | : | |
| CARLOS ANTONIO DEBERRY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of July, 2021.

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0092010, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 2541 Shiloh Springs Rd., Dayton, Ohio 45426
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

**{¶ 1}** Defendant-Appellant Carlos Antonio Deberry pled guilty in the Champaign County Court of Common Pleas to one count of aggravated possession of drugs, a felony of the second degree. In exchange for the plea, five additional charges were dismissed. The trial court imposed a minimum mandatory term of six years and a maximum term of nine years in prison, a $2,000 fine, and court costs. Per the agreement of the parties, the court also ordered that certain seized items be forfeited.

**{¶ 2}** Deberry's appointed counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that she can find no non-frivolous issues for appeal. Counsel has provided three potential assignments of error for our review. Deberry has filed a pro se brief, raising two additional arguments. Upon our independent review of the record, we agree with counsel's assessment that the appeal is frivolous. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

**{¶ 3}** According to the "Court Statement" of Deputy Tyler Reisor of the Champaign County Sheriff's Office, at approximately 12:15 a.m. on March 7, 2020, Reisor observed a white sports utility vehicle (SUV) travelling northbound on South U.S. Route 68 at a speed of 32 mph in a 55 mph zone. The deputy turned around his cruiser and began to drive behind the SUV. The deputy then saw the passenger-side wheels of the SUV cross the white fog line. After re-entering the traffic lane, the SUV put on its turn signal and pulled onto the shoulder. Reisor turned on his overhead emergency lights and stopped behind the SUV.

**{¶ 4}** Deputy Reisor approached the SUV and found a male driver, Deberry, and

a female passenger, Elizabeth Wells. When the deputy asked Deberry if he was okay, Deberry stated that he had pulled over because he thought the deputy was going to pull him over. Upon speaking with Deberry and Wells, the deputy learned that both had prior convictions for drug offenses and that Deberry did not have a valid driver's license. Wells denied using drugs that day or having drugs in the vehicle. Deberry indicated that he had consumed "a couple drinks earlier."

{¶ 5} The deputy returned to his cruiser and ran their identifying information through his on-board computer, which indicated that Deberry's license was suspended. Upon returning to the SUV, Deputy Reisor asked Deberry to exit the vehicle to talk about his suspended license and alcohol consumption. Reisor conducted a patdown for weapons and felt a "heavy, hard, square object" in Deberry's left jacket pocket, and he could see that it was silver and shiny. The deputy removed the item and found it to be a digital scale with "a lot of white residue on it." Reisor placed Deberry in handcuffs. Deberry said that he had forgotten that he had the scale and that there was nothing in the car. Reisor informed Deberry of his *Miranda* rights, and after back-up (Deputy Josh Thomas) arrived, he placed Deberry in the back of his cruiser.

{¶ 6} While Deberry was in the police cruiser, Deputy Reisor conducted a search of the vehicle, which led to the discovery of a long black bag with numerous plastic jeweler bags and a large amount of a crystalized substance that he suspected was methamphetamine. Reisor then asked Deberry what he thought the deputy had found. Deberry responded, "Baggies * * * Baggies with meth." When the deputy confirmed that he had, Deberry admitted that the drugs were his. Deberry further admitted that marijuana might also be in the SUV. Deberry denied that he planned to "deal" the

methamphetamine and said, instead, that he planned to smoke it and share it. Deputy Reisor resumed his search of the vehicle and located a plastic food container with marijuana. Deberry was then taken to the Champaign County Sheriff's Office.

{¶ 7} Deputy Reisor spoke with Deberry in an interview room at the Sheriff's Office, where Deberry made additional statements about how he planned to use the methamphetamine. Deberry also consented to, and provided, a urine sample. Deberry later was transported to the jail.

{¶ 8} A presumptive drug test was conducted on the found substance, which tested positive for methamphetamine. Deputy Thomas weighed the drug and found that it weighed 21 grams. The drugs were sent to the Bureau of Criminal Investigation for further analysis.

{¶ 9} On March 9, 2020, Deberry was charged by complaint in municipal court with aggravated possession of drugs (over 21 grams of methamphetamine), attempted trafficking in drugs (methamphetamine), and six misdemeanors. The trial court set a $10,000 cash bond, which Deberry posted on March 10, 2020.

{¶ 10} On April 13, 2020, Deberry was indicted on six charges: two counts of aggravated possession of drugs (methamphetamine), one a felony of the second degree (Count 1) and the other a felony of the fifth degree (Count 3); aggravated trafficking in drugs (methamphetamine), a felony of the second degree (Count 2); illegal use or possession of drug paraphernalia (digital scale, black bag, jeweler bags), a fourth-degree misdemeanor (Count 4); and two counts of operating a vehicle under the influence of a controlled substance or metabolite, both unclassified misdemeanors (Counts 5 and 6).

{¶ 11} Deberry appeared for his arraignment on May 7, 2020, at which time the

trial court appointed counsel and continued his municipal court bond. Six days later, new defense counsel contacted the court and indicated that he had been retained by Deberry. The court approved the substitution and scheduled a pretrial conference for May 18, 2020. Within a few days, defense counsel filed a request for discovery and a waiver of Deberry's speedy trial rights.

{¶ 12} The court conducted a telephone pretrial conference as scheduled. The record does not include a transcript of the pretrial conference, but the court filed a journal entry memorializing what occurred. The entry addressed Deberry's bond, an alleged bond violation, discovery, jury view, and anticipated motions and witnesses. The court also scheduled the final pretrial conference for July 27 and a jury trial for August 18-19, 2020.

{¶ 13} With respect to Deberry's bond, the journal entry noted that Deberry had tested positive for methamphetamine and amphetamine on May 7, 2020, and his counsel was told to advise Deberry that future positive tests could have "negative ramifications" for him. The court continued Deberry's bond, ordered Deberry to attend McKinley Hall for substance abuse rehabilitative services, and stated that failure to provide proof of attendance to pretrial services would result in a bond violation allegation. The court further noted that Deberry was alleged to have violated his bond on May 12, 2020, by testing positive for methamphetamine and amphetamine, and that it would address the violation at the hearing on Deberry's anticipated motion to suppress.

{¶ 14} On June 1, 2020, Deberry moved to suppress all evidence resulting from his stop and arrest, arguing that the deputy had lacked a reasonable articulable suspicion of criminal activity to justify his stop and detention. The trial court scheduled a

suppression hearing for June 29, 2020.

{¶ 15} Deberry did not appear on time for the June 29 hearing. After defense counsel spoke with him by phone and learned that he was en route, the court ordered a brief recess to enable defense counsel to speak with his client before the proceeding. Before the recess was taken, defense counsel indicated that he wanted to have the deputy's body camera video of the incident submitted as a joint exhibit and to file a supplemental motion to suppress. The court responded that it would address those matters after the recess.

{¶ 16} When the proceedings resumed, the trial court addressed Deberry's tardiness and his reported bond violations. Four of the violations involved Deberry's testing positive of methamphetamine and amphetamine. The additional violation alleged that Deberry had been arrested for complicity to burglary in Clark County. The court advised Deberry that if he were found guilty of the violations, the court could consider them as a sentencing factor and that his bond could be revoked. After conferring with defense counsel, Deberry admitted to the positive tests, but he denied the alleged burglary because that case had been dismissed. The court found Deberry guilty of violating his bond and revoked it.

{¶ 17} The court and counsel then addressed defense counsel's motion to continue the suppression hearing and to file a supplemental motion. Defense counsel asked for a continuance so that residue on the digital scale could be tested. The court denied the request, concluding that whether the scale was tested was not relevant to whether the scale was constitutionally seized. The court further ruled that defense counsel could request to supplement his motion to suppress at the conclusion of the

hearing.

{¶ 18} After that discussion concluded, the prosecutor told the court and defense counsel that the State's pending plea offer would be rescinded if the motion to suppress hearing proceeded. The court paused the proceeding to allow the parties to confer.

{¶ 19} When the hearing again resumed, the prosecutor informed the trial court that the parties had reached a plea agreement. Under the terms of the agreement, Deberry agreed to withdraw his motion to suppress and to plead guilty to Count One of the indictment. In exchange for the plea, the State agreed to dismiss the remaining charges, to recommend a presentence investigation report, and to review the report if ordered. As to Deberry's sentence, the prosecutor orally stated that she agreed to recommend a "definite prison term of three years." Upon questioning by the court about a "definite" prison sentence in light of the Reagan Tokes Act, the parties indicated that they understood that the State would recommend a minimum term of three years. The written plea agreement stated as to the recommended sentence:

- If the Defendant has no further criminal history record than what is already known and disclosed in the Prosecutor's discovery packet or by the Defendant's discovery packet, the State agrees to recommend at Sentencing: a minimum prison term of three (3) years.

- If the PSI report or other source reveals an additional criminal record either not previously known to the State or not disclosed prior [to] the entrance of the plea, OR if the Defendant is charged with an additional criminal offense either while out on bond or from the date of the entering of the plea to the final date on which the Defendant is

sentenced for this offense, OR if the Defendant after entry of the plea

is found to have violated a condition of bond, the parties agree that

the State is not bound to its recommendations noted above.

The parties agreed that this was a mandatory term of imprisonment and that Deberry was not entitled to judicial release.   Deberry further agreed to pay any court costs and court-appointed legal fees that were imposed and to the forfeiture of six items seized by law enforcement.   Finally, Deberry agreed that the $1,128 in cash that was seized from him would be used to cover any costs and fines, and the remainder would be returned to him.

{¶ 20} The court then proceeded to conduct a Crim.R. 11 plea hearing, during which Deberry entered a guilty plea, as outlined above.   During the hearing, the trial court asked Deberry if he understood that the court was not required to impose the recommended sentence.   Deberry responded affirmatively.   The court accepted the guilty plea and ordered a presentence investigation.

{¶ 21} After Deberry's guilty plea was accepted, Deberry moved for reconsideration of the revocation of bond.   Deberry and his counsel both spoke, indicating that Deberry was not expecting to go to jail that day, and he wanted additional time to get his affairs in order.   After a discussion, the court ruled that Deberry's bond remained revoked.   However, the court granted him release from detention from 5:00 p.m. that day (Monday, June 29) until noon on Thursday, July 2.   During that time, Deberry would be placed on an electronic monitor, he would be permitted to go to specific locations only, and he had a curfew of 8:00 p.m. to 8:00 a.m.   The court repeatedly advised Deberry that failure to return to detention could result in a charge of escape as a second-degree felony.   The court told Deberry that the presentence report writer would

visit him at the jail that weekend. The court scheduled Deberry's sentencing for July 21, 2020.

{¶ 22} On July 2, defense counsel faxed a copy of his "emergency motion for delayed reporting to Tri County Jail," requesting that Deberry's reporting time be delayed until 6:00 p.m. The prosecutor did not oppose the motion, and the court granted it. Deberry, however, did not report to the jail on July 2, as ordered.

{¶ 23} On July 6, 2020, the trial court filed a journal entry, noting that Deberry had failed to return to detention and was at large. The court issued a capias for Deberry's arrest. The court further indicated that it would address several bond violations, which it enumerated, upon Deberry's apprehension. The court filed a notice of additional bond violations. Deberry was arrested on July 15, 2020 in Clark County and transported to the Tri County Jail on July 16, 2020.

{¶ 24} Prior to sentencing, the State filed a sentencing memorandum, asking to be relieved of its obligation to recommend a three-year minimum sentence. In addition, the court notified the parties that Deberry did not participate in the ordered presentence investigation due to his failure to return to detention, and that it had obtained a prior presentence investigation report (PSI) from Clark County in Clark C.P. No. 2015-CR-626. The court made the Clark County PSI available to both parties. Deberry's counsel filed a motion to withdraw as attorney of record. The trial court denied counsel's motion but indicated that it would appoint defense counsel for the sentencing hearing, if necessary, to ensure that counsel received payment.

{¶ 25} At the sentencing hearing, the court addressed Deberry's alleged bond violations, which consisted of several unauthorized travels, his failure to return to jail, and

his failure to appear for his PSI interview. Deberry admitted to the bond violations. The trial court found Deberry guilty of violating bond, told Deberry that the bond violations would be considered as a sentencing factor, and held that the State was "relieved of its sentencing recommendation as outlined in the plea agreement."

{¶ 26} The Court then invited statements from the prosecutor, defense counsel, and Deberry. The court informed the State that it would not consider the amount of the drugs, as that factor was already included in the level of the offense. Citing Deberry's conduct in the case, his conduct on bond, and his criminal record, the prosecutor recommended a minimum prison term of seven or eight years. The prosecutor acknowledged that Deberry was not being sentenced for trafficking in drugs, but argued that the amount of methamphetamine and its packaging were relevant considerations.

{¶ 27} Defense counsel responded that two of the charges listed in the Clark County PSI (disorderly conduct and telephone harassment, both in 2006) had been dismissed, and that the methamphetamine in this case was in bulk form, not separated into baggies. Counsel further argued that Deberry was cooperative with law enforcement, that there was no indication he had engaged in criminal activity while out on release from jail, that Deberry simply needed more time to secure his personal property, and that Deberry's failure to return to jail should be addressed by the State via an escape charge, not additional prison time in this case. Counsel asked the trial court to impose a minimum term of three years in prison.

{¶ 28} Speaking on his own behalf, Deberry apologized to the court and explained his efforts to obtain a copy of the title to his trailer while out on bond. Deberry also addressed his prior incarceration. Deberry stated, "I can understand why [the

prosecutor] would state my background and my actions make it look like a prime target for recidivism. * * * I can admit that I'm an addict and constantly incarcerated and not giving me any help. I don't think that looks good for me."

{¶ 29} The prosecutor informed the court that "the State's criminal record for the Defendant and the Clark County Municipal Court website" reported that Deberry was, in fact, convicted of disorderly conduct and telephone harassment.

{¶ 30} The trial court spoke with Deberry further about his actions while out of bond and told Deberry that it had to balance the recidivism and seriousness factors. The court explained that it viewed all of Deberry's bond violations as one sentencing factor and that it considered as a mitigating factor that "It is not like you took off on us and we didn't know where you were at. That is the real irony here. You told us where you were at. You were just not coming in."

{¶ 31} After additional discussion with Deberry, the trial court imposed a minimum mandatory term of six years in prison and maximum term of nine years in prison. The court orally addressed R.C. 2929.11 and the seriousness and recidivism factors of R.C. 2929.12 and noted that Deberry had no military service. The court explained its sentencing, stating in part:

 * * * Court disagrees that the baseline of three years, as originally recommended, was an appropriate sentence. The Court's sentencing consideration not only takes into account the seriousness factors, but also takes into account the Defendant's conduct on bond. The Court elected not to impose a higher penalty, prison penalty, in part because the Defendant had kept his monitor device charged and was able to be tracked.

The Court also takes into account that the Defendant was cooperative at the scene. And despite the amount of drugs on him and despite his prison record the fact that he was cooperative with law enforcement and not being combative deserves to be recognized as well. So that is how the Court came to the six-year figure.

The court further addressed the order in which previously or subsequently-imposed prison sentences would be served, Deberry's presumptive release from prison, and his required three-years of postrelease control. The trial court further ordered that Deberry receive 10 days of jail time credit, that he pay a fine of $2,000, and that six items of seized property be forfeited. The court notified Deberry of his right to appeal. The trial court's judgment entry was consistent with its oral pronouncements.

{¶ 32} Deberry appeals from his conviction.

## II. *Anders* Appeal Standard

{¶ 33} Upon the filing of an *Anders* brief, an appellate court must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). "An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply." *State v. White*, 2d Dist. Montgomery No. 28338, 2020-Ohio-5544, ¶ 14, citing *State v. Pullen,* 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If

we find that any issue – whether presented by appellate counsel, presented by the defendant, or found through an independent analysis – is not wholly frivolous, we must reject the *Anders* brief and appoint new appellate counsel to represent the defendant. *White* at ¶ 14, citing *Marbury* at ¶ 7; *State v. Almeyda*, 2d Dist. Montgomery No. 28727, 2021-Ohio-862, ¶ 3.

### III. *Anders* Review

{¶ 34} Deberry's appellate counsel has suggested three potential assignments of error: (1) whether Deberry's plea was made knowingly, intelligently, and voluntarily, (2) whether the trial court properly determined that the State was not bound by its agreement to recommend a minimum term of three years in prison, and (3) whether Deberry's sentence was proper. Deberry has filed a pro se brief in which he argues that the trial court erred in relying on the prior Clark County PSI, which he alleges included inaccurate information, and that the State breached the plea agreement by failing to recommended a minimum term of three years in prison.

### A. Events Prior to Deberry's Plea

{¶ 35} Deberry pled guilty to one count of aggravated possession of drugs. A plea of guilty is a complete admission of guilt. *E.g., State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9; *State v. Wheeler*, 2d Dist. Montgomery No. 24112, 2011-Ohio-3423, ¶ 3; Crim.R. 11(B)(1). Consequently, a guilty plea generally waives all appealable errors that may have occurred in the trial court, unless such errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus; *Wheeler* at ¶ 3. We have reviewed the record in this case

and find nothing to suggest that anything that occurred prior to the plea hearing precluded Deberry from entering a knowing, intelligent, and voluntary plea.

### B. Deberry's Plea

{¶ 36} "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. Under Crim.R. 11(C)(2), a trial court must personally address the defendant and (a) determine that the defendant is voluntarily making the plea with an understanding of the nature of the charges and the maximum penalty, and, if applicable, eligibility for probation and community control sanctions; (b) inform the defendant of, and determine that he or she understands the effect of the plea, and that the court may proceed with judgment and disposition; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving important constitutional rights including the right to a jury trial, the right to confront witnesses against him or her, compulsory process, that the State must prove guilt beyond a reasonable doubt, and that at trial, he or she has the privilege against self-incrimination. *State v. Merrick*, 2d Dist. Greene No. 2019-CA-29, 2020-Ohio-3744, ¶ 44.

{¶ 37} The Ohio Supreme Court has urged courts to comply literally with Crim.R. 11. However, the focus, when reviewing the plea colloquy, should be on whether "the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 12.

{¶ 38} The trial court must strictly comply with Crim.R. 11 when it comes to

constitutional rights. *Id.* at ¶ 46. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly." *Dangler* at ¶ 14. On the other hand, substantial compliance is required when waiving non-constitutional rights. "Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 39} We have reviewed the transcript of the plea hearing and the parties' plea agreement. In this case, the trial court fully complied with each requirement of Crim.R. 11(C)(2). It thoroughly discussed the maximum penalty that Deberry faced, including making clear that the State would be recommending a particular prison sentence but that the court would determine his actual prison sentence. The court reviewed the constitutional rights that Deberry was waiving by entering his guilty plea and the effect of his plea. The court also ensured that Deberry understood that he was waiving a resolution of his motion to suppress by entering his plea. The plea hearing transcript reflects that Deberry entered his plea knowingly, intelligently, and voluntarily. We find no non-frivolous issues related to Deberry's plea.

### C. Deberry's Sentence

{¶ 40} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). In determining an appropriate sentence, the trial court may consider information beyond that strictly related to the conviction offense.

*State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 15 (2d Dist.). This is because the court is no longer concerned with the narrow issue of guilt. *Bowser* at ¶ 14; *State v. Wiles*, 2d Dist. Clark No. 2017-CA-69, 2018-Ohio-3077, ¶ 19. A court may consider, for example, the circumstances underlying the offense, information contained in a presentence investigation report, hearsay evidence, prior arrests, facts supporting a charge that resulted in an acquittal, and facts related to a charge that was dismissed under a plea agreement. *E.g., State v. McNeil*, 2d Dist. Clark No. 2019-CA-51, 2020-Ohio-3202, ¶ 14; *State v. Bodkins*, 2d Dist. Clark No. 2010-CA-38, 2011-Ohio-1274, ¶ 43; *Wiles* at ¶ 19.

{¶ 41} However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 42} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably

calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 43} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record, if any.

{¶ 44} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 45} The Ohio Supreme Court recently stated that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. "When reviewing felony sentences that are imposed solely after considering the factors in R.C.

2929.11 and R.C. 2929.12, we do not analyze whether those sentences are unsupported by the record." *State v. McDaniel*, 2d Dist. Darke No. 2020-CA-3, 2021-Ohio-1519, ¶ 11, citing *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18; *Jones* at ¶ 26-29. Instead, "[w]e simply must determine whether those sentences are contrary to law." *Dorsey* at ¶ 18. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.).

{¶ 46} In this case, the trial court complied with its obligation to consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. The court expressly considered the principles and purposes of sentencing and the sentencing factors set forth in R.C. 2929.11 and 2929.12, and it made explicit findings, both orally and in its judgment entry, regarding those statutes. The court thoroughly explained to Deberry how it would consider his bond violations at sentencing, and it told the prosecutor that it would not consider the amount of drugs involved to be a seriousness factor, stating that "the legislature already determined what the level of seriousness is for that particular amount of meth."

{¶ 47} In addition, based on the date of Deberry's offense, the trial court properly imposed an indefinite sentence, pursuant to the Reagan Tokes Law, 2018 S.B. 201. The court's stated minimum term of six years in prison was within the statutory range for a felony of the second degree, *see* R.C. 2929.14(A)(2)(a), and the court correctly calculated the corresponding maximum term. The parties agreed that the court was required to

impose a mandatory sentence.  Upon review of the record, Deberry's sentence was not contrary to law.

{¶ 48} Deberry claims that the State should have been bound by its agreement to recommend a minimum term of three years in prison.  Deberry's plea agreement expressly provided, however, that the State's agreement to recommend a three-year minimum term was conditional.  The parties agreed that the State would not be bound to its recommendation if any of three conditions occurred: (1) the PSI or other source revealed a previously unknown criminal record, (2) Deberry were charged with an additional criminal offense prior to sentencing, or (3) Deberry were "found to have violated a condition of bond."

{¶ 49} On July 6 and July 10, 2020, the trial court filed notifications of alleged bond violations based on Deberry's conduct while on release from jail.  Prior to sentencing, Deberry admitted to bond violations based on failing to follow the court's instructions, failing to return to jail on July 2, and failing to appear for his PSI interview.  The court found him guilty of the bond violations and notified Deberry that the violations would be used as a consideration at sentencing.  Based on the terms of the plea agreement, we find no arguably meritorious claim that the court erred in further finding that the State was "relieved of its sentencing recommendation as outlined in the plea agreement."

{¶ 50} Finally, Deberry claims that the trial court erred in considering the Clark County PSI, which it had obtained prior to sentencing.  A trial court is entitled to order a presentence investigation and to consider the PSI at sentencing.  Considering that Deberry failed to return to jail and participate in a PSI interview, we find no arguably meritorious claim that the trial court erred in obtaining a previously-prepared PSI to

consider, particularly when there is nothing in the record to suggest the information was incorrect or unduly prejudicial. *See State v. Lewis*, 2d Dist. Greene No. 2005-CA-66, 2006-Ohio-4402, ¶ 44. We emphasize that, prior to the sentencing, the court notified that parties that it had obtained the Clark County PSI and permitted the parties to review the report, and that the parties were permitted to comment on the PSI at sentencing.

{¶ 51} Deberry asserts that, based on the Clark County PSI, the State portrayed him as a "major violator of drug laws" and reported that he had been involved in possession of cocaine in 2016. Deberry also asserted at sentencing that the Clark County PSI erroneously reported that he was convicted of disorderly conduct, a fourth-degree misdemeanor, and telephone harassment, a first-degree misdemeanor, in 2006. Deberry and his attorney made the court aware of this alleged error, although the State asserted that the PSI was correct. On appeal, Deberry argues that his sentence was tainted by "conclusory and factually unsupported allegations by the State."

{¶ 52} The Clark County PSI reflects that Deberry had juvenile adjudications in Chicago and that his adult criminal history dated back to May 1995, when he was 17 years old. His prior adult offenses included "narcotics" (1995 in Chicago) and "manufacture and deliver cocaine" (1995 and 1998 in Chicago). Deberry's two convictions for manufacture and deliver cocaine resulted in prison terms of 4 years and 6 years, respectively. Deberry had six additional adult misdemeanor convictions, the most recent being in 2016 for operating a vehicle while under the influence (methamphetamine). The Clark County PSI was prepared for sentencing in Case No. 2015-CR-626, which involved possession of cocaine, a felony of the fifth degree. Deberry acknowledged at his plea hearing that he had been sentenced to prison four

times and was most recently released in March 2019.

{¶ 53} On this record, we find no non-frivolous claim that the trial court erred in considering the 2016 Clark County PSI at sentencing. Deberry's conduct in failing to return to jail as ordered caused the absence of a new PSI in this case. In addition, Deberry had acknowledged that he had served four prison sentences and was "constantly incarcerated" and that his criminal history reasonably suggested that he was at a higher risk of recidivism. Finally, Deberry informed the court of alleged errors in the PSI, which concerned two misdemeanor convictions, not his felony record.

{¶ 54} Upon review of the sentencing hearing transcript and the trial court's judgment entry, we find no non-frivolous issues related to Deberry's sentence.

## IV. Conclusion

{¶ 55} We have reviewed the potential assignments of error raised by Deberry and his appellate counsel and have performed our duty under *Anders* to conduct an independent review of the record. After a thorough review, we have found no issues with arguable merit for Deberry to advance on appeal. Accordingly, appellate counsel's motion to withdraw is granted. The trial court's judgment will be affirmed.

. . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Samantha B. Whetherholt
Carlos Antonio Deberry
Nicole Rutter-Hirth
Hon. Nick A. Selvaggio