[Cite as *State v. Somerset*, 2022-Ohio-2170.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | |
|---|---|
| STATE OF OHIO | : |
| | : |
| Plaintiff-Appellee | : Appellate Case No. 29249 |
| | : |
| v. | : Trial Court Case No. 2019-CR-3517/3 |
| | : |
| DEVERONO J. SOMERSET | : (Criminal Appeal from |
| | : Common Pleas Court) |
| Defendant-Appellant | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of June, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA Atty. Reg. No. 0053392, 101 Southmoor Circle NW, Kettering, Ohio 45429
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Deverono J. Somerset appeals from his convictions in the Montgomery County Court of Common Pleas for involuntary manslaughter, aggravated robbery, and kidnapping. His appellate counsel filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating he was unable to find any non-frivolous issues for appeal. Upon our independent review, we agree with counsel's assessment. For the following reasons, the trial court's judgment will be affirmed.

## I.      Facts and Procedural History

{¶ 2} On the evening of September 19, 2019, Somerset, along with several other men, was involved in a robbery which led to the shooting death of Mitchel Miller at Miller's Kettering apartment. According to the record, Somerset and his compatriots planned to buy marijuana from Miller, rob him, and then leave rapidly. When they arrived, however, there were other individuals in the apartment, and the plan swiftly devolved. After ordering everyone to the ground, Somerset and another co-defendant took some items and left, but a remaining co-defendant apparently struggled with Miller and ultimately shot and killed him.

{¶ 3} Somerset was eventually charged in an 18-count indictment with multiple counts of murder, aggravated robbery, aggravated burglary, felonious assault, and kidnapping. All counts came with attendant three-year firearm specifications. Months later, as part of a plea agreement with the State, Somerset agreed to plead guilty to one count of involuntary manslaughter (by bill of information) (Count 1), one count of kidnapping (Count 15), one count of aggravated robbery (Count 18), and a three-year firearm specification. He also entered into a proffer agreement to assist in the prosecution

of a co-defendant. In exchange, the State agreed to dismiss the remaining 15 counts and specifications. No agreement was made as to the length of sentence. We note that the plea agreement erroneously lists 16 offenses as being dismissed, including Count 1, to which Somerset actually pled guilty.

{¶ 4} At the August 30, 2021 disposition, the trial court orally sentenced Somerset to an indefinite sentence of a minimum term of 15 years and a maximum term of 21½ years in prison. The judgment entry, however, stated that Somerset was to serve 15 to 20½ years. In September 2021, appellate counsel was appointed and, after reviewing the record, filed an *Anders* brief asserting that he could find no arguably meritorious issues that may be argued. We, in turn, informed Somerset he had 60 days to file a pro se brief. He filed such a brief, and we will incorporate that into our independent review of the matter.

## II.    *Anders* Review

{¶ 5} Upon the filing of an *Anders* brief, an appellate court must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). "An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply." *State v. White*, 2d Dist. Montgomery No. 28338, 2020-Ohio-5544, ¶ 14, citing *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v.*

*Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue – whether presented by appellate counsel, presented by the defendant, or found through an independent analysis – is not wholly frivolous, we must reject the *Anders* brief and appoint new appellate counsel to represent the defendant. *White* at ¶ 14, citing *Marbury* at ¶ 7; *State v. Almeyda*, 2d Dist. Montgomery No. 28727, 2021-Ohio-862, ¶ 3. We have reviewed the record in its entirety and will specifically address the following important aspects of the case noted by appellate counsel.

<u>Plea Hearing</u>

**{¶ 6}** "Due process requires that a defendant's plea be knowing, intelligent, and voluntary," and compliance with Crim.R. 11(C) ensures the constitutional mandate is followed. *State v. Brown*, 2d Dist. Montgomery No. 28966, 2021-Ohio-2327, ¶ 8.

**{¶ 7}** Crim.R. 11(C)(2) mandates that a trial court may not accept a guilty plea without first addressing the defendant and:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence. (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront

witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶ 8}** Strict compliance with the constitutional advisements is crucial to demonstrate that the plea is aligned with due process. *Brown* at ¶ 9. "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required." *State v. Massie*, 2d Dist. Clark No. 2020-CA-50, 2021-Ohio-3376, ¶ 10.

**{¶ 9}** Conversely, the court must substantially comply with notification of the non-constitutional rights contained in Crim.R. 11(C)(2)(a) and (b), and prejudice must be demonstrated to vacate a plea. *State v. McElroy*, 2d Dist. Montgomery No. 28974, 2021-Ohio-4026, ¶ 17. " 'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.' " *State v. Thomas*, 2d Dist. Montgomery No. 26907, 2017-Ohio-5501, ¶ 37, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

**{¶ 10}** Here, after the State read into the record the text of the plea and proffer agreements, and the trial court inquired with Somerset about his age, education level, and citizenship status and confirmed that he had read and understood the forms after consulting with his attorney. Somerset also confirmed that he was not under the influence of drugs or alcohol and that he had no physical or mental condition that made it difficult

to hear or understand his rights. The court further explained about the bill of information and about giving up the right to a grand jury determination of probable cause. Somerset waived that right. He also confirmed that he understood that he was waiving the right to have the bill of information in his possession for 24 hours before answering the allegations.

{¶ 11} The court then explained in detail the possible prison terms that applied to the charges and the firearm specification (importantly, that the specification must be served prior to and consecutively to the other sentences) and the possible financial penalties. It also explained, in detail, the indefinite term of imprisonment Somerset faced by pleading guilty, including the minimum and maximum terms, that there was a presumption of release after the minimum, and the way in which he could be made to stay in prison beyond his mandatory minimum time. Somerset confirmed that he understood.

{¶ 12} The trial court then told Somerset that after his release from prison, he would be required to serve five years of post-release control and outlined the penalties that could attach if the terms of post-release control were violated or if he ran afoul of the law during the supervision period. Somerset, again, indicated that he understood.

{¶ 13} Somerset was then asked if he was pleading guilty of his own free will. He confirmed that he was. The court then inquired if Somerset understood that his guilty pleas were complete admissions of guilt to the charges and the firearm specification; "So as to these charges and that firearm specification, you're standing saying yes, it's true, I did those things." Plea Tr. at 35. Once again, Somerset answered in the affirmative. Then,

after reading the facts of the charges, the court asked, "Are those facts true?" He replied, "Yes, ma'am." Plea Tr. at 39.

{¶ 14} The constitutional rights were also explained during the hearing. The court expressed that Somerset would be giving up his rights to a jury trial, proof of guilt beyond a reasonable doubt, a unanimous jury verdict, confrontation of witnesses, cross-examination of adverse witnesses, compulsory process, and the right to not incriminate himself. Plea Tr. at 35-37. Somerset asserted that he understood.

{¶ 15} Finally, the trial court confirmed that Somerset had talked with his attorney about the charges against him and what defenses, if any, he might have. He confirmed that he was satisfied with the representation provided by counsel.

{¶ 16} We conclude that the trial court's colloquy substantially complied with Crim.R. 11(C)'s non-constitutional advisements. The record also indicates that the court strictly complied with the constitutional advisements. Accordingly, we find no arguable error in the plea hearing and conclude that Somerset's plea was made in a knowing, intelligent, and voluntary manner.

Sentencing Hearing

{¶ 17} Somerset's sentencing hearing was held August 30, 2021. The court began the proceeding by noting that it had reviewed the presentence investigation report, sentencing memoranda from both parties, and victim impact materials submitted by the State. Somerset was then given a chance to speak on his own behalf. After his statement, the victim's father gave a lengthy account of the impact Miller's death had had on him and his family, including Miller's young daughter.

{¶ 18} After the impact statement, the court noted that it had considered the principals and purposes of sentencing and the seriousness and recidivism factors in the Ohio Revised Code in crafting Somerset's sentence. It also made consecutive sentence findings, i.e., that the sentences would be necessary to protect the public from future crime and punish the offender and were not disproportionate to the seriousness of Somerset's conduct and to the danger he poses to the public. The court further found that at least two of the offenses were committed as part of a course of conduct, and the harm caused by two or more of the multiple offenses was so great that no single prison term would adequately reflect the seriousness of the conduct. Finally, the court found that consecutive service was necessary to protect the public from future crime by Somerset.

{¶ 19} Somerset was once again advised on the details of Ohio's indefinite sentencing statute and that the Department of Rehabilitation and Corrections could reduce his minimum sentence by five to fifteen percent, but that the reduction was rebuttable by the court. He was also told that he would be required to enroll in the violent offender database.

{¶ 20} His sentence was then orally imposed as follows: (1) 9 years for involuntary manslaughter and a consecutive 3 years for the firearm specification, for a total of 12 years; (2) 3 years for the aggravated robbery count, to be served consecutively to the just-imposed 12 years, for a total of 15 years; (3) 11 years for kidnapping, concurrent to the 15 years; and (4) an additional indefinite maximum term of 5½ years pursuant to Reagan Tokes, for an aggregate sentence of a minimum of 15 years to a maximum of 21½ years of imprisonment. He was also ordered to pay restitution in the amount of

$5,039.25. Next, the court noted that Somerset would be subject to five years of community control on each count (although the terms would run concurrently) and that, if he violated those terms, he could face an additional term of imprisonment. The trial court also explained that he was ineligible for earned time credit. Finally, Somerset was accurately informed of his appellate rights.

{¶ 21} Having reviewed the sentencing hearing transcript, we find only one potential issue – a discrepancy between the maximum sentence as told to Somerset at the sentencing hearing and what was journalized in the court's judgment entry. At the hearing, the trial court informed Somerset that he was to serve a mandatory minimum term of 15 years, plus an additional indefinite 5½ years pursuant to the Reagan Tokes Act, "for a total aggregate sentence of a minimum of 15 years to a maximum of 21 and a half years of imprisonment." Disposition Tr. at 57-58. The court's judgment entry, however, states that "the total aggregate sentence is a minimum of fifteen (15) years to a maximum of twenty and one-half (20.5) years CRC."

{¶ 22} The year-difference in sentence length (which worked to Somerset's benefit) could be attributed to a transcription error or a math error on the part of the court, but ultimately, the sentence recorded in the court's judgment entry was the official pronouncement of the court. *See Burton v. Ware*, 2d Dist. Greene No. 1986-CA-54, 1987 WL 7506, *2 ("The court speaks only through its journal, and a judgment or order is not regarded as having been rendered until it is reduced to a journal entry."); *State v. Ellington*, 36 Ohio App.3d 76, 77-78, 521 N.E.2d 504 (9th Dist.1987) (a court speaks through its journals and an entry is not effective until it has been journalized). This is not

an arguably meritorious claim and there are no other sentencing issues with arguable merit.

<u>Inconsistent Sentences</u>

**{¶ 23}** A final potential assignment of error noted by appellate counsel was inconsistent sentences between co-defendants. Based the record before us, there is no evidence that Somerset's sentence was different than his co-defendants', and as we previously noted, the trial court considered the principles and purposes of sentencing and the seriousness and recidivism factors when crafting Somerset's sentence. Thus, this potential assignment of error has no arguable merit.

<u>Somerset's Arguments</u>

**{¶ 24}** In his brief, Somerset has raised several potential arguments as well. He first asserts that during his guilty plea he did not understand that he was admitting his "conduct satisfied each element of the crime." Appellant's Brief at 2. During the plea hearing, though, the court inquired if Somerset understood that his guilty pleas were complete admissions of guilt to the charges; "So as to these charges and that firearm specification, you're standing saying yes, it's true, I did those things." Plea Tr. at 35. Somerset answered in the affirmative. Then, after reading the facts of the charges, the court asked, "Are those facts true?" He replied, "Yes, ma'am." Plea Tr. at 39. This is not an arguably meritorious claim.

**{¶ 25}** He also argues that "a reasonable jurist could come to different conclusions as to whether [his] conviction is constitutionally sound if gone to trial and * * * there is a reasonable probability he would have been found not guilty." Appellant's Brief at 2. This

position has no arguable merit either. A guilty plea is a complete admission of guilt and waives all appealable errors except to the extent that the errors precluded the appellant from knowingly, intelligently, and voluntarily entering his guilty plea. *State v. Frazier*, 2016-Ohio-727, 60 N.E.3d 633, ¶ 81 (2d Dist.). The record is clear that Somerset voluntarily entered into his guilty plea.

{¶ 26} Next, Somerset avers that his trial attorney rendered ineffective assistance of counsel during his guilty plea. "To prevail on a claim of ineffective assistance of counsel after pleading guilty, a defendant must show that: (1) counsel's advice was not within the range of competence demanded of attorneys in criminal cases; and (2) but for counsel's errors, there was a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial." *State v. Dapice*, 2d Dist. Clark No. 2020-CA-2, 2020-Ohio-4324, ¶ 18. Here, in addition to Somerset stating on the record that he was satisfied with his counsel's performance (Plea Tr. at 39), there was evidence that he significantly benefited from his attorney's performance. Somerset was indicted on 18 counts, including six counts of murder, two counts of aggravated robbery, three counts of aggravated burglary, three counts of felonious assault, and three counts of kidnapping. In addition, a three-year firearm specification attached to each and every count. Without the plea agreement negotiated by his counsel, Somerset could have potentially spent the rest of his life in prison. Ineffective assistance of counsel is not an arguably meritorious claim in the case at bar.

{¶ 27} Finally, Somerset argues that he is entitled to a hearing on a double jeopardy challenge because it is "obvious from a reading of the indictment" that the

allegations in the indictments were created by the "same acts occurring in the same place having the same objective contained within the time frame of the first." [sic] Appellant's Brief at 3.

{¶ 28} The Double Jeopardy Clause of the United States Constitution declares that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," and similarly, Article I, Section 10 of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense." The protections given by the Ohio and United States Constitutions are coextensive. *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7.

{¶ 29} In practice, "[t]he Double Jeopardy Clause protects against three abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10.

{¶ 30} Somerset's complaint -- that he was charged with multiple crimes stemming from the same course of events -- does not implicate any of the protections of the double jeopardy clause; he was not prosecuted for the same offense after being acquitted, he was not prosecuted a second time after being convicted, and he was not punished multiple times for the same offense. A double jeopardy violation is not an arguably meritorious claim.

### III.    Conclusion

{¶ 31} We have reviewed the entire record and have found no potentially meritorious appellate issues. Having found no non-frivolous issues, appellate counsel is

permitted to withdraw, and the judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Jeffrey T. Gramza
Hon. Mary L. Wiseman